UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN E. BOYLE,
        Plaintiff,

                                        CIVIL ACTION NO.
        v.                              09-11435-MBB

BARNSTABLE POLICE DEPARTMENT,
TOWN OF BARNSTABLE, JOHN KLIMM,
Town Manager, CHIEF JOHN FINNEGAN
(retired), SGT. ARTHUR CAIDO and
SGT. RICHARD MORSE,
        Defendants.

**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 38)**


**June 11, 2012**

**BOWLER, U.S.M.J.**

        Pending before this court is a second motion for summary
judgment (Docket Entry # 38) filed by defendants Barnstable
Police Department, Town of Barnstable, John Klimm ("Klimm"),
Chief John Finnegan (retired) ("Chief Finnegan"), Sergeant Arthur
Caido ("Caido") and Sergeant Richard Morse ("Morse")
(collectively "defendants") pursuant to Rule 56, Fed. R. Civ. P.
("Rule 56").


                    PROCEDURAL BACKGROUND

        On August 28, 2009, plaintiff John E. Boyle ("Boyle" or
"plaintiff") filed a verified complaint (Docket Entry # 1)
against defendants in which he raised various federal claims
under 42 U.S.C. § 1983 ("section 1983").  Boyle also raised state

claims against defendants for malicious prosecution (Count Four); abuse of process (Count Five); conspiracy (Count Six); intentional infliction of emotional distress (Count Seven); and libel, slander and defamation (Count Eight). (Docket Entry # 1).

On January 31, 2011, defendants filed for summary judgment on both the federal and state law claims. (Docket Entry # 25). On September 22, 2011, this court granted defendants' motion for summary judgment in part. (Docket Entry # 34). This court dismissed two defendants named in the original complaint, Chief McDonald and Chief Murphy, as well as the section 1983 claims against the Barnstable Police Department and the Town of Barnstable. (Docket Entry # 34). All counts were dismissed except for: (1) the portion of Count One based on the First Amendment retaliatory prosecution claim relative to the two operating without a license charges; (2) the portion of Count One setting out a First Amendment retaliation claim based on defendants' subjecting Boyle to false and libelous media coverage with the two Cape Cod Times articles; (3) the section 1983 supervisory liability claim against Klimm in Count Three; (4) Count Six against all defendants; and (5) the portion of Count Eight alleging that Caido made a statement on September 13, 2006, that was defamatory. (Docket Entry # 34). Defendants seek summary judgment on all the remaining claims. (Docket Entry # 38).

STANDARD OF REVIEW

Summary judgment is appropriate when the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. It is designed "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Davila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (citation and internal quotation marks omitted). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the nonmoving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Id.

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citation, internal brackets and quotation marks omitted). "After such a showing, the burden shifts to the nonmoving party,

with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." Hinchey v. Nynex Corporation, 144 F.3d 134, 140 (1st Cir. 1998) (citation and internal quotation marks omitted).

The nonmoving party, who bears the ultimate burden of proof, may not rest on allegations in his briefs, see Borshow Hospital & Medical v. Cesar Castillo, 96 F.3d 10, 14 (1st Cir. 1996), "but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Where, as here, a complaint is verified, it is appropriate to consider factual averments based on personal knowledge therein as the equivalent of an affidavit for purposes of summary judgment. See Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir. 1991).

Defendants submit a LR. 56.1 statement of undisputed facts. (Docket Entry # 30). Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record.[1] See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003); see also Kenda Corporation, Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n.7 (1st Cir.

_____

[1] Statements of law are not considered.

4

2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'"). The court examines the facts in a light most favorable to the non-moving party and resolves any reasonable inferences in that party's favor. See Dasey v. Anderson, 304 F.3d 148, 153 (1ˢᵗ Cir. 2002).

Construing the facts in Boyle's favor for the purpose of adjudicating the summary judgment motion, they show the following.

FACTUAL BACKGROUND

Boyle is a longtime resident of Hyannis, Massachusetts. (Docket Entry # 1, ¶ 1). At all times relevant to this action, Boyle was the owner and chief executive officer of King's Coach, Inc. ("King's Coach"), a sedan, van and limousine service provider licensed in the Town of Barnstable, Massachusetts. (Docket Entry # 30, ¶ 1). This action arose from events between Boyle and defendants in connection with the licensing and operation of King's Coach in 2006.

The Town of Barnstable Rules and Regulations for the Regulation of Taxi Cabs and the Operation Thereof ("Rules and Regulations") dictate that an individual must obtain a permit from the Barnstable Town Manager in order to operate a livery business in the Town of Barnstable. (Docket Entry # 30, ¶ 2;

Docket Entry # 33, Ex. 2).  In order to acquire a permit, which
the Rules and Regulations also refer to as "a vehicle for hire
license," a business must have its vehicles inspected and pay a
fee.  (Docket Entry # 30, ¶ 2; Docket Entry # 33, Ex. 2).
Section 21 of Massachusetts General Laws chapter 40 allows towns
such as Barnstable to prescribe such ordinances and bylaws and
affix monetary penalties not exceeding a certain amount for any
breach.  Mass. Gen. L. ch. 40, § 21.

     Boyle founded King's Coach in April of 2000.  (Docket Entry
# 1, ¶ 2).  At its peak, the company owned 20 vehicles and
employed 35 drivers and eight office staff.  (Docket Entry # 1, ¶
2).  On August 18, 2005, Boyle purchased Five Star Enterprises,
Inc. ("Five Star"), a "rubbish and demolition and construction
collection service" operating in Falmouth, Massachusetts
("Falmouth"), from a court appointed receiver.  (Docket Entry #
1, ¶ 4).  The company was sold at least in part due to a
resurgence of media interest in Melvin Rein ("Rein"), the
company's previous owner, following the unsolved murder of his
wife.  (Docket Entry # 1, ¶ 6).  Boyle began assisting the police
with the investigation and thus had access to non-public
information.  (Docket Entry # 1, ¶ 9).  When media outlets asked
Boyle for his input, Boyle provided "scenarios that ran counter
to prevailing thought in law enforcement and published accounts
in the local paper."  (Docket Entry # 1, ¶ 11).  Boyle began

operating Five Star on June 9, 2005, in an attempt to preserve the company's value. (Docket Entry # 1, ¶ 3).

On November 16, 2005, Thomas Geiler ("Geiler"), the Town of Barnstable licensing agent, notified Boyle that he must have the livery vehicles inspected at the Barnstable police station on December 13 or 14, 2005, in order to obtain 2006 permits for King's Coach. (Docket Entry # 30, ¶ 4; Docket Entry # 26, Ex. 11). According to Geiler, Boyle did not renew his permits on either date. (Docket Entry # 39-6). On December 20, 2005, the Town of Barnstable Office of Regulatory Services ("Office of Regulatory Services") contacted Boyle to advise him that the permits were in jeopardy of not being renewed. (Docket Entry # 11, ¶ 10). Boyle instead applied for a limousine license in the Town of Falmouth with the hope of consolidating his business operations there. (Docket Entry # 11, ¶ 12). In December 2005, Falmouth Town Manager Whitenour ("Whitenour") notified Boyle that "King's Coach could not obtain a license in Falmouth due to prejudice of then Falmouth Police Chief David Cusolito." (Docket Entry # 1, ¶ 12). Under Whitenour's direction, Boyle withdrew the license application. (Docket Entry # 1, ¶ 12). Due to ongoing bad publicity and "financial considerations," Boyle

placed King's Coach and Five Star up for sale.[2]  (Docket Entry #
1, ¶ 13).  He sold Five Star on or about May 1, 2006.

Boyle also "contacted the Licensing Division of Barnstable
who agreed to allow Boyle an extension on renewing his limousine
license because of a potential sale."[3]  (Docket Entry # 1, ¶ 14).
Boyle met with Thomas Geiler ("Geiler"), the Town of Barnstable
licensing agent, at least three times regarding the extension.
(Docket Entry # 1, ¶ 15).  Geiler assured Boyle that "things were
OK" and advised him to renew his licenses "at some point."
(Docket Entry # 1, ¶ 15).  Relying on Geiler's assurances, Boyle
continued operating King's Coach.  (Docket Entry # 1, ¶ 15;
Docket Entry # 32, p. 9).

In a letter dated June 5, 2006, the Office of Regulatory
Services warned Boyle that if he did not renew his permits by
June 20, 2006, the permits would be considered "null and void."
(Docket Entry # 33, Ex. 1).  The letter extended Boyle's permits

---

[2]  Boyle does not specify when he placed King's Coach up for
sale.  The record, however, includes a letter from a potential
buyer dated October 28, 2005, in which the buyer informed Boyle
he would be unable to purchase the business at that time.
(Docket Entry # 32, Ex. 9).
[3]  According to defendants, the Office of Regulatory Services
contacted Boyle on December 20, 2005, to inform him that his
licenses were in "jeopardy of not being renewed."  (Docket Entry
# 30, ¶ 5).  The Barnstable Office of Regulatory Services then
gave Boyle until January 20, 2006, to have his vehicles inspected
and licenses renewed.  (Docket Entry # 30, ¶ 5; Docket Entry #
26, Ex. 11, ¶ 10).  Boyle argues that this deadline was never set
and notes that the only evidence proffered to support it is the
licensing agent's affidavit (Docket Entry # 26, Ex. 11).  (Docket
Entry # 32, p. 8).

and notified him that the Town "considered his permits to be valid at least until June 20, 2006."[4] (Docket Entry # 32, pp. 4, 8-10). The Office of Regulatory Services, however, sent the letter to an address Boyle had not occupied in over four years. (Docket Entry # 1, ¶ 38). Unaware of the deadline until September 2006,[5] Boyle did not have his vehicles inspected or his permits renewed by June 20, 2006. (Docket Entry # 30, ¶ 6).

On June 28, 2006, Geiler sent an email to Sergeant Sean Sweeney ("Sweeney") of the Barnstable Police Department informing him that Boyle "never did come in" to renew his permits. (Docket Entry # 39-6). Geiler noted that his office was "receiving complaints" that King Coach vehicles were operating but his office was not "able to verify this." (Docket Entry # 39-6). Geiler asked Sweeney to "make the police force aware that King's Coach has no valid 06 permits" and that they should stop any operating King Coach vehicles. (Docket Entry # 39-6).

On August 28, 2006, Morse, as the complainant, filed an application for a criminal complaint against Boyle for two offenses allegedly committed on July 17, 2006. (Docket Entry # 39-9). The application charged Boyle with one count of larceny[6]

---

[4] Defendants maintain that the letter was a notification to Boyle that if he did not have his vehicles inspected by June 20, 2006, he would not be issued permits for 2006. (Docket Entry # 30, ¶ 5).

[5] Boyle did not know about this letter until approximately mid-September 2006. (Docket Entry # 1, ¶¶ 37 & 38).

[6] In the previous order for partial summary judgment, this court dismissed the retaliation claims based on the larceny charges

and another count of violating a municipal bylaw or ordinance for operating a business without a license in violation of Massachusetts General Laws chapter 260, section 21 ("section 21").  (Docket Entry # 39-9).  On February 20, 2007, Boyle pled guilty to the operating without a license charge.  (Docket Entry # 39-9).  The court ordered Boyle to pay $100 for court costs, which Boyle paid on June 19, 2007.  (Docket Entry # 39-9).  At the end of a probationary period on November 15, 2007, the court dismissed the operating without a license charge and closed the case.  (Docket Entry # 39-9).

On August 29, 2006, Caido, as the complainant, filed an application for a criminal complaint against Boyle for two offenses allegedly committed on August 16, 2006.  (Docket Entry # 39-13).  The application charged Boyle with one count of larceny[7] and another count of violating a municipal bylaw or ordinance for operating a business without a license in violation of section 21.  (Docket Entry # 39-13).  On the same day, the court issued a criminal complaint charging Boyle with one count of larceny and one count of violating a municipal ordinance for operating a business without a license.  (Docket Entry # 39-9).  On February 20, 2007, the court dismissed the charge of larceny and held a

upon finding that they were supported by probable cause.  (Docket Entry # 34).

[7]  As noted in footnote seven, this court dismissed the retaliation claims based on the larceny charges upon finding that they were supported by probable cause.  (Docket Entry # 34).

hearing on the charge of operating without a license.  (Docket
Entry # 39-13).  Boyle acknowledged sufficient facts on the
operating without a license charge and the court issued a
continuance without a finding.  (Docket Entry # 39-13).  The
court assessed Boyle a $100 fee for court costs, which Boyle paid
on June 19, 2007.  (Docket Entry # 39-13).  At the end of a
probationary period on November 15, 2007, the court dismissed the
operating without a license count and closed the case.  (Docket
Entry # 39-13).

On July 21, 2006, the Cape Cod Times published an article
that stated Boyle "is in trouble with former employees, the state
attorney general's office, the town of Barnstable and would-be
customers."  (Docket Entry # 39-4).  The article detailed that
Boyle operated King's Coach "illegally for nearly six months" and
"allegedly left customers in the lurch."  (Docket Entry # 39-4).
The articles state that Boyle did not "renew his permit to run a
livery business in Barnstable by" December 31, 2005, "as
required" and includes Boyle's explanation that he did not have
$1,500 in January for the license fee.  (Docket Entry # 39-4).

The Cape Cod Times published a follow up article on
September 8, 2006, outlining the various allegations raised
against Boyle and King's Coach.  (Docket Entry # 39-5).  The
article reported that the Barnstable Police Department levied
"four criminal complaints against [Boyle] . . . for allegedly

operating his company King's Coach without a livery license."
(Docket Entry # 39-5). Boyle filed suit against the Cape Cod
Times seeking $12,500,000 in damages for the "inaccurate,
incorrect, misrepresented and untrue" content of the articles.
(Docket Entry # 1, ¶ 25). On November 9, 2009, the Massachusetts
Superior Court (Barnstable County) allowed summary judgment for
the Cape Cod Times, finding that all "statements [Boyle]
complained of are either true, substantially true, or not
defamatory as a matter of law." Boyle v. Cape Cod Times, 2009 WL
6593979, *1 (Mass.Super.Ct. Nov. 9, 2009).

Boyle filed an exhibit (Docket Entry # 39-1) which he
describes as "a MA Department of Industrial Accidents
investigator's report." (Docket Entry # 1, ¶ 37). The report
purportedly provides a foundation for the libel, slander and
defamation claims in Count Eight. It consists of a single page
narrative of events that took place on certain dates in
connection with Green's investigation of Boyle. (Docket Entry #
39-1). The entry for September 13, 2006, notes that Caido told
Allan J. Green ("Green"), whom Boyle identifies as a "Department
of Industrial [A]ccidents investigator" (Docket Entry # 32, p.
5), and "Asst. General Counsel Charles Crowley" ("Crowley") that
Caido did not "want us to drop anything on this John Boyle
because everybody in the department knows all about him and his
going ons." (Docket Entry # 39-1). The September 13, 3006 entry

also states that Green and Crowley went to Barnstable District Court for a scheduled arraignment which, at the request of Boyle's attorney, the court rescheduled to November 1, 2006. Green and Crowley then spoke with Caido who made the foregoing statement. (Docket Entry # 39-1).

King's Coach suspended operations on July 26, 2006. (Docket Entry # 1, ¶ 31). Boyle asserts that the actions taken by the Barnstable Police Department and town officials caused the suspension of operations. (Docket Entry # 1, ¶ 31).


DISCUSSION

I. <u>Libel, Slander and Defamation</u>

Defendants seek summary judgment on the remaining libel, slander and defamation claim in Count Eight. (Docket Entry # 39). They submit that Caido's statement is not defamatory because it constitutes an opinion rather than a statement of fact. (Docket Entry # 39). In response, plaintiff contends that the statement is a statement of fact and constitutes defamation. (Docket Entry # 41).

The exhibit containing the allegedly defamatory statement includes a series of entries made by Green during the course of his investigation of King's Coach and Boyle.[1] (Docket Entry #

---

[1] There is a factual dispute as to whether the statement in Green's report was made and if so whether it was made by Caido, a sergeant of the Barnstable Police Department. (Docket Entry ## 39 & 41). Defendants contend there is "no evidence which implicates defendant Caiado" because the statement noted by Green

13

39-1).  Green's notation for September 13, 2006, reflects that Caido told Green and "Atty. Crowley" that he did not "want us to drop anything on this John Boyle because everybody in the department knows all about him and his going ons."  (Docket Entry # 39-1).  The complaint relies on this statement for the defamation claim against Caido.  (Docket Entry # 1, ¶ 37).

The Massachusetts Supreme Judicial Court ("SJC") favors the use of summary judgment in defamation cases.  See Aldoupolis v. Globe Newspaper Co., 500 N.E.2d 794, 796 (Mass. 1986) ("summary judgment is particularly appropriate in defamation cases because if the allegedly libelous material is not actionably defamatory, there is no genuine issue of material fact for trial"); see also Godbout v. Cousens, 485 N.E.2d 940, 943 (Mass. 1985) (noting that the court "favor[s] the use of summary judgment procedures in defamation cases").  The determination whether a statement is "one of fact or opinion" is "critical" and "generally considered a question of law."  Cole v. Westinghouse Broadcasting Co., Inc.,

_____

states that it "was spoken by a Sgt. Caido of the *Brewster* Police Department" (emphasis added).  (Docket Entry # 39).  The complaint names Sgt. Arthur Caido of the Barnstable Police Department.  (Docket Entry # 1, ¶ 48).  Plaintiff argues that the confusion is the result of a "typo" in Green's report.  (Docket Entry # 41, p. 4).  For the purpose of summary judgment, all factual disputes are decided in favor of the nonmoving party, in this case Boyle.  See Dasey, 304 F.3d at 153.  Accordingly, this court finds that the note in Green's report refers to Caido as a sergeant of the Barnstable Police Department.  Furthermore, as noted in this court's previous order for summary judgment (Docket Entry # 34), this court adheres to the spelling "Caido" as it appears in the complaint to avoid confusion.

435 N.E.2d 1021, 1025 (Mass. 1982). Courts must treat opinions as "constitutionally protected" while imposing "civil liability" on the other. Id. (internal citations omitted); see also King v. Globe Newspaper Co., 512 N.E.2d 241, 243-44 (Mass. 1987) ("[s]tatements of pure opinion are constitutionally protected").

The analysis, however, does not end there. Massachusetts courts recognize certain forms of opinion that are actionable, applying the parameters of section 566 of the Restatement (Second) of Torts (1977) ("the Restatement"). See Pritsker v. Brudnoy, 452 N.E.2d 227, 228 (Mass. 1983); Cole, 435 N.E.2d at 1027; Myers v. Boston Magazine Company, Inc., 403 N.E.2d 376, 378 (Mass. 1980). The Restatement distinguishes statements of "pure" opinion, which are not actionable, from statements of "mixed" opinion, which may be actionable. Restatement (Second) of Torts § 566 (1977). A "mixed" opinion is "actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts § 566 (1977). For the "undisclosed" facts to be "defamatory," they must be statements of fact and cannot be true. See Cole, 435 N.E.2d at 1027. Thus, if Caido's statement is an opinion, it may be actionable if it implies the allegation of undisclosed and untrue defamatory facts.

The test to determine whether a statement constitutes a statement of fact is whether it may "reasonably be viewed" as a

statement of fact.  Id. at 1026 (statements were not factual because they "could not reasonably be viewed as statements of fact"); see also Greenbelt Cooperative Publishing Association v. Bresler, 398 U.S. 6, 13-14 (1970) (referring to the plaintiff's actions as "blackmail" was not libelous because it could not have been understood as a statement of fact); Pritsker, 452 N.E.2d at 229 (phrases "unconscionably rude and vulgar people" and "pigs" were not defamatory because "the average listener could not reasonably conclude" that the comments "were based on undisclosed defamatory facts"); Myers, 403 N.E.2d at 379 (statement that sports announcer was "enrolled in a course for remedial speaking" was not defamatory because the reader would not "reasonably understand" the statement "to be an assertion of fact").

Statements that are imprecise and incapable of being proven false cannot reasonably be viewed as statements of fact.  See Cole, 435 N.E.2d at 1027.  The court in Cole determined that the defendant's use of the terms "sloppy and irresponsible reporting" and "history of bad reporting techniques" to describe the plaintiff could not reasonably be viewed as statements of fact. Id.  The court reasoned that, "The meaning of these statements is imprecise and open to speculation.  They cannot be characterized as assertions of fact.  They cannot be proved false."  Id. Accordingly, the court found that the statements did not

constitute statements of fact and there was no actionable
defamation.  Id.

The SJC suggests that if a term or statement is too vague or
imprecise, then it is less likely to support a claim of
defamation.  See National Association of Government Employees,
Inc. v. Central Broadcasting Corporation, 396 N.E.2d 996, 1002
(Mass. 1979) (the term "communism" was "too vague to be
cognizable" as defamation).  The court in National Association
invoked the logic of Buckley v. Littell, 539 F.2d 882 (2$^{d}$ Cir.
1976), in which the Second Circuit held that the term "fascist"
had "'tremendous imprecision'" and was "too 'loosely definable'"
and "'variously interpretable'" to be considered defamation.
National Association, 396 N.E.2d at 1002.  The court in National
Association applied this rule to the use of the word "communism,"
finding that even if it carried "some further meaning or
overtone," it was too vague to be actionable.  Id.

Similarly, Caido's statement that he didn't want "us" to
"drop anything on this John Boyle because everybody in the
department knows all about him and his going ons" is imprecise,
open to speculation and incapable of being proven false.  The
beginning of Caido's statement, that he "does not want us to drop
anything on this John Boyle," is purely his opinion because it
contains no piece that can be proved false.  "A pure opinion by
itself is not actionable no matter how unjustified and

17

unreasonable the opinion may be or how derogatory it is."
Pritsker, 452 N.E.2d at 228 (internal quotations omitted).  The
second part of the statement, "because everybody in the
department knows all about him and his going ons," cannot be
proved false because the reference to Boyle's "going ons" has an
unclear meaning.  The term "going ons" is similar to the
statement in Cole that the plaintiff had a "history of bad
reporting techniques."  See Cole, 435 N.E.2d at 1027.  Using the
reasoning in Cole, the term is imprecise, open to speculation and
impossible to prove false.  See Id.

     The term "going ons" is also vague, akin to the term
"communism" in National Association.  See National Association,
396 N.E.2d at 1002.  The reasoning by the court in National
Association is therefore applicable here insofar as a vague term
does not support a claim of defamation.  Id.  As a result,
Caido's statement does not support a claim of defamation because
it cannot be "reasonably viewed" as a statement of fact.  Cole,
435 N.E.2d at 1026.

     The remaining inquiry is whether Caido's statement may
constitute defamation as a "mixed" opinion under the parameters
of the Restatement.  See Restatement (Second) of Torts § 566
(1977).  As concluded in the foregoing discussion, Caido's
statement is imprecise and vague, similar to the statements at
issue in Cole and National Association.  As such, the conclusion

18

in Cole is applicable here, to wit, "it is not clear that any undisclosed facts are implied, or if any are implied, it is unclear what they are.  Finally, it is entirely unclear (even assuming that facts are implied) that they are defamatory facts." Cole, 435 N.E.2d at 1027.  Caido's statement itself is imprecise and any implication of undisclosed facts is likewise imprecise. Furthermore, plaintiff does not argue that Caido's statement implies undisclosed facts; nor does plaintiff present any evidence that such facts may be defamatory.  Thus, the reasoning by the court in Cole applies and Caido's statement does not constitute a "mixed" opinion.

Plaintiff nonetheless argues that the statement is defamatory because it was "[s]poken to suggest a broad knowledge of negativity by many, many people" and it was made to "maliciously damag[e] the plaintiff."  (Docket Entry # 41).  This argument is unavailing because it consists of unsupported speculations and plaintiff fails to provide sufficient facts and/or law to withstand summary judgment.  See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ("[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation"); Rossy v. Roche Products, Inc., 880 F.2d 621, 624 (1st Cir. 1989) (noting that even where proof is

19

based on inferences, summary judgment for defendant may be appropriate where "plaintiff rests merely upon unsupported allegations and speculations").

Even if plaintiff presented factual support for the above argument, he fails to establish a claim of defamation absent proof that Caido's statement was either a statement of fact or a "mixed" opinion.  See Cole, 435 N.E.2d at 1027.  For reasons explained above, Boyle fails to provide facts to avoid summary judgment.  Furthermore, Caido's use of the phrase "everybody in the department," while it may be erroneous, does not support a defamation claim.  Even a statement that is "'unreasonable, extreme or erroneous'" does not make it defamation if it is not a statement of fact or a mixed opinion.  See Cole, 435 N.E.2d at 1026 (quoting Rinaldi v. Holt, Rinehart & Winston, Inc., 366 N.E.2d 1299, 1306 (N.Y. 1977), a New York case applying New York law).

As a final matter, this court need not respond to arguments concerning malice and whether plaintiff is a public figure because Caido's statement does not constitute actionable defamation as a matter of law.  See Cole, 435 N.E.2d at 1027.  In sum, Caido's statement is neither a statement of fact nor a "mixed" opinion.  The statement could not reasonably be viewed as a statement of fact because it is imprecise, vague, open to speculation and incapable of being proved false.  The statement

is not a "mixed" opinion because it does not imply the allegation of undisclosed defamatory facts.  As a result, plaintiff fails to establish a genuine issue of material fact as to whether Caido's statement is defamatory.  Summary judgment is therefore appropriate for the remaining portion of Count Eight.

II.  <u>Conspiracy</u>

Defendants seek summary judgment on the common law civil conspiracy claim in Count Six.  (Docket Entry # 39).  To prove a civil conspiracy claim, "the [plaintiff] must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement."  <u>Bartle v. Berry</u>, 953 N.E.2d 243, 253 (Mass.App.Ct. 2011).  Defendants argue that the claim of civil conspiracy must be dismissed because there is no underlying tortious action.  (Docket Entry # 39).

Plaintiff alleges civil conspiracy based on the premise that defendants knew or should have known that "the Cape Cod Times had intentionally misrepresented facts" and defendants acted in "concert with Cape Cod Times who set the tone through sensational journalism."  (Docket Entry # 1).  Plaintiff proffers the generalized conclusion that defendants met or communicated with one another, upon information and belief, to "conspire against" him and King's Coach.  (Docket Entry # 1, ¶ 29).  Without supporting factual evidence, such conclusions do not constitute

part of the summary judgment record.  See Chiang, 595 F.3d at 30

(noting requirement to ignore "'conclusory allegations,

improbable inferences, and unsupported speculation'" on summary

judgment); Estate of Bennett v. Wainwright, 548 F.3d 155, 178

(1st Cir. 2008) (summary judgment appropriate on section 1983

conspiracy claim "where nonmoving party rests merely on

conclusory allegations" and finding that the plaintiffs provided

"no evidence, either direct or circumstantial of an agreement

among defendants from which a reasonable jury could have inferred

a conspiracy among them to inflict harm upon the plaintiffs").

    The First Circuit recognizes two kinds of civil conspiracy.

Kurker v. Hill, 689 N.E.2d 833, 836 (Mass.App.Ct. 1998); accord

Spenlinhauer v. Spencer Press, Inc., 959 N.E.2d 436, 448

(Mass.App.Ct. 2011).  In one form of conspiracy, liability is

imposed on an individual for the tort of another where there is

evidence of "'concerted action.'"  Kurker, 689 N.E.2d at 836.

The other form of conspiracy arises where there is no independent

basis for imposing tort liability but there is an element of

coercion.  Id.  Plaintiff does not allege the existence of

coercion among or between defendants.  (Docket Entry ## 1 & 41).

Thus, his claim of civil conspiracy relies on the former type of

conspiracy.

    Accordingly, plaintiff must establish an underlying tortious

act in which defendants acted in concert.  See Bartle, 953 N.E.2d

22

at 253.  Plaintiff attempts to base his conspiracy claim on the underlying tort of defamation by the Cape Cod Times.  (Docket Entry # 1).  The issue of whether the statements in the two Cape Cod Times articles were defamatory was decided in Boyle v. Cape Cod Times, 2009 WL 6593979, *6 (Mass.Super.Ct. Nov. 9, 2009).  The court in Boyle held that the statements in both articles were not defamatory because "each of the statements he complains of are either true, substantially true, or not defamatory as a matter of law."  Id.

According to the doctrine of collateral estoppel, the finding that the articles were not defamatory has preclusive effect on the pending matter.  Collateral estoppel applies when:

> (1) there was a final judgment on the merits in a prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the earlier judgment.

Porio v. Department of Revenue, 951 N.E.2d 714, 718 (Mass.App.Ct. 2001); accord Okoli v. Okoli, 963 N.E.2d 737, 742 (Mass.App.Ct. 2012); see also Green v. Town of Brookline, 757 N.E.2d 731, 734 (Mass.App.Ct. 2001) (citing the same elements and noting that the "rule of issue preclusion may be applied when the second action is brought on a different claim").  The court in Boyle granted summary judgment to the Cape Cod Times and dismissed Boyle's defamation claims.  Boyle, 2009 WL 6593979 at *7.

23

The first element of collateral estoppel is satisfied
because disposition by summary judgment constitutes a final
judgment on the merits.  See <u>Associated General Contractors of
Massachusetts v. Boston District Council of Carpenters</u>, 642
F.Supp. 1435, 1439 (D.Mass. 1986).  The second element is
satisfied because Boyle was a party in the prior adjudication.
<u>See</u> <u>Boyle</u>, 2009 WL 6593979 at *1.  The third element is satisfied
because the court in <u>Boyle</u> held that the statements in the Cape
Cod articles were not defamatory.[2]  <u>See</u> <u>Id.</u> at *6.  The fourth
element is satisfied because the finding that the statements were
not defamatory was essential to the court's summary judgment
decision.  <u>See</u> <u>Boyle</u>, 2009 WL 6593979, at *6.  Thus, the finding
in <u>Boyle</u> that the Cape Cod Times did not make defamatory
statements precludes the present action under the doctrine of
collateral estoppel.  Plaintiff therefore cannot base the civil
conspiracy claim upon the allegation that the articles contained
defamatory statements.

Plaintiff does not present any alternative tort upon which
to base the conspiracy claim.  (Docket Entry ## 1 & 41).  Given
that each element of collateral estoppel is satisfied, the prior
adjudicative finding that the Cape Cod Times articles did not

---

[2]  Furthermore, the statements at issue in <u>Boyle</u> were the same
statements upon which plaintiff bases his present civil
conspiracy claim, thus establishing the third element's
requirement that the issue in the prior adjudication is identical
to the issue in the current litigation.  (Docket Entry # 41).

contain defamatory statements has preclusive effect over the
present matter.  Without a showing of defamation by the Cape Cod
Times, plaintiff presents no viable underlying tort as the basis
for his civil conspiracy claim.  Accordingly, summary judgment on
the civil conspiracy claim is appropriate.


III.  <u>Section 1983</u>

Defendants move for summary judgment on the section 1983
First Amendment retaliatory prosecution claim in Count One based
on the two violations of a municipal bylaw or ordinance for
operating a business without a license that took place on July 17
and August 16, 2006.  (Docket Entry # 39).  Defendants also seek
summary judgment on the section 1983 First Amendment retaliation
claim based on defendants' subjecting Boyle to the allegedly
false and libelous media coverage with the two Cape Cod Times
articles.  (Docket Entry # 39).

A.  <u>Retaliatory Prosecution Based on Criminal Complaints</u>

Defendants first address plaintiff's claim that defendants
retaliated against him by filing the two violations of operating
without a license on July 17 and August 16.  (Docket Entry # 39).
Defendants argue that this claim fails because plaintiff does not
demonstrate that his conduct was "a 'substantial factor' or a
'motivating factor' for the defendant's retaliatory decision."

(Docket Entry # 39, p. 10) (quoting <u>Powell v. Alexander</u>, 391 F.3d 1, 17 (1st Cir. 2004)).

A "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action" under section 1983.  <u>See Hartman v. Moore</u>, 547 U.S. 250, 259 (2006).  In particular, the plaintiff "must show that [the plaintiff's] conduct was constitutionally protected, and that [the plaintiff's] conduct was a 'substantial factor' or a 'motivating factor' for the defendants' retaliatory conduct."  <u>Rectrix Aerodome Centers, Inc. v. Barnstable Municipal Airport Commission</u>, 632 F.Supp.2d 120, 131 (D.Mass. 2009) (internal brackets and ellipses omitted).  Moreover, "the causation is understood to be but-for causation, without which the adverse action would not have been taken."  <u>See Hartman</u>, 547 U.S. at 260.

Plaintiff contends that defendants retaliated against him because he spoke "contrary to the prosecutors['] then prevailing thought of an ongoing murder investigation," i.e., the unsolved murder of Rein's wife.  (Docket Entry # 1, ¶ 43).  Plaintiff alleges that defendants retaliated against him by filing the two applications for the criminal complaints for the July 17 and August 16, 2006 offenses.  (Docket Entry # 41).

Plaintiff does not present any factual evidence of a connection between his statements about the unsolved murder of

Rein's wife and defendants' action of filing criminal complaints for the offenses on July 17 and August 16. (Docket Entry ## 1, 32 & 41). Instead, plaintiff relies on conclusory allegations (Docket Entry # 1) which are insufficient to survive summary judgment. See Chiang, 595 F.3d at 30. Without evidence of any connection between defendants' alleged animus and their conduct relating to the two complaints, there is no showing of the required "but-for" causal connection. See Hartman, 547 U.S. at 260. As a result, summary judgment is appropriate on the retaliation claim based on the July 17 and August 16 complaints. See McCarthy, 56 F.3d at 315.

Accordingly, it is not necessary to address defendants' probable cause argument. That said, plaintiff's assertion that there was no probable cause for the July 17 and August 16 criminal complaints because "defendants sought to, and did, bypass probable cause . . . hearing denying the plaintiff a fundamental right of process" (Docket Entry # 41) is misplaced. To support the argument, plaintiff cites to the right to a probable cause hearing in Rule 3(f), Mass. R. Crim. P. (Docket Entry # 41). A lack of a probable cause hearing does not constitute a denial of due process. See Commonwealth v. Britt, 285 N.E.2d 780, 783 (Mass. 1972) (noting that "[i]n most circumstances the defendant has no right to a probable cause hearing"). Furthermore, section 3(B)(2) of Massachusetts General

Laws chapter 90C provides that a violator will be granted a hearing before a criminal complaint issues "if the violator so requests in writing within four days of the violation to the clerk-magistrate of the district court for the judicial district where the offense occurred."  Mass. Gen. Law. ch. 90C § 3(B)(2). Plaintiff does not show that he requested such a hearing.

B.  Retaliation Based on Cape Cod Times Articles

The remaining portion of the retaliation claim in Count One rests on plaintiff's allegation that defendants "retaliat[ed] against him because he was subject of false [sic], inaccurate, untrue and libelous media exposure."  (Docket Entry # 1).  Again, in response to defendants' causation argument, plaintiff fails to present any factual evidence of a connection between defendants' alleged animus and the alleged injury to plaintiff caused by the media exposure.  (Docket Entry ## 1, 32 & 41).  Plaintiff's failure to establish a genuine issue of material fact as to whether defendants' alleged animus was the "but-for" cause of the media exposure is fatal to the claim.  See Hartman, 547 U.S. at 260.  Thus, the retaliation claim based on defendants' subjecting Boyle to the allegedly false and libelous media coverage with the two Cape Cod Times articles is subject to summary judgment.

IV.  Failure to Supervise

Defendants next seek summary judgment on the remaining
supervisory liability claim against Klimm in Count Three.
(Docket Entry # 39).  Defendants contend that the claim fails
because there was no underlying constitutional violation by any
person whom Klimm supervised.  (Docket Entry # 39).

The complaint alleges a section 1983 violation based upon a
refusal or failure to prevent the harassment, malicious
prosecution and conspiracy targeting Boyle.  (Docket Entry # 1).
Plaintiff maintains that Klimm failed to "instruct, supervise,
control, and discipline" Caido, Morse and Finnegan.  (Docket
Entry # 1).

To establish a supervisory liability claim, plaintiff must
show that Klimm acted with "'deliberate indifference toward the
possibility that deficient performance of the task eventually may
contribute to a civil rights deprivation,'"  Sanchez v. Pereira-
Castillo, 590 F.3d 31, 49 (1st Cir. 2009).  In addition,
plaintiff must establish that Klimm "acted with reckless or
callous indifference" to plaintiff's constitutional rights.
Clancy v. McCabe, 805 N.E.2d 484, 490 (Mass. 2004) (internal
quotation marks omitted).  An essential element for a claim of
supervisory liability is the supervisor's "actual or constructive
knowledge" of the risk that plaintiff's rights would be violated.
Id. at 490-91.  Finally, "there must be an affirmative link

between the supervisory official's acts or omissions and his subordinate's violation of the plaintiff's constitutional rights." Id. at 490 (internal citations omitted).

This court previously found an absence of sufficient evidence for a reasonable finder of fact to find a constitutional violation to support the section 1983 claims in Count One. (Docket Entry # 34, p. 64). As such, plaintiff fails to establish a supervisory liability claim against Klimm. As a result, summary judgment is appropriate for the supervisor liability claim against Klimm in Count Three.

CONCLUSION

In accordance with the foregoing discussion, defendant's motion for summary judgment (Docket Entry # 38) is **ALLOWED.**


                    /s/ Marianne B. Bowler
          **MARIANNE B. BOWLER**
          United States Magistrate Judge